# STATE ex rel. LYNDON A. SMITH v. VILLAGE OF ISLAND LAKE and Others.[1]

June 18, 1915.

Nos. 19,213—(25).

**Incorporation of village.**

1. Section 1200, G. S. 1894, as amended by chapter 208, Laws 1903, providing for the incorporation of certain villages, contemplates and requires that the necessary population to authorize incorporation should be composed of actual residents in the territory, those having a fixed abode therein, and to exclude those temporarily sojourning therein.

**Same — sojourners excluded.**

2. In determining such population laborers temporarily employed at lumber camps cannot be included.

**Quo warranto — no estoppel against state — case distinguished.**

3. No facts are presented to justify the conclusion that the state is estopped to call in question the legality of the incorporation of the village of Island Lake, in Beltrami county. State v. Village of Harris, 102 Minn. 340, distinguished.

Upon the relation of the attorney general the district court for Beltrami county granted its writ of *quo warranto,* directed to the Village of Island Lake and its president and recorder. Respondents answered and the matter was heard before Stanton, J., who made findings and ordered that a writ of ouster issue. From the judgment entered pursuant to the order for judgment, respondents appealed. Affirmed.

*Henry Funkley,* for appellants.

*Lyndon A. Smith,* Attorney General, and *John C. Nethaway,* Assistant Attorney General, for relator.

[1] Reported in 153 N. W. 257.

Note.—For cases passing upon estoppel of state because of laches to attack municipal charter, see note in 13 L.R.A.(N.S.) 533.

As to who may maintain *quo warranto* to test validity of organization of municipal corporation of political subdivision of state, see note in 21 L.R.A. (N.S.) 685.

BROWN, C. J.

Proceeding in *quo warranto* for the dissolution of the village of Island Lake, in Beltrami county, in which judgment of dissolution was ordered and entered and respondents appealed.

The facts are short and as follows: On November 13, 1905, a petition signed by 25 persons residing in the territory sought to be incorporated as a village was presented to the board of county commissioners of Beltrami county praying for the incorporation of the territory therein described as the Village of Island Lake. The prayer of the petition was granted and by proper resolution the incorporation of the village duly declared. The proceedings were. had under the provisions of section 1200, G. S. 1894, as amended by chapter 208, p. 314, Laws 1903. An election was subsequently held, at which officers were chosen, and the village thereupon assumed and entered upon the discharge of the functions incident and pertaining to municipal corporations. The territory so included within the village was sparsely settled, lying south of Red Lake, and is four miles long by three miles wide, containing 7,600 acres of land, only 15 of which were platted into town lots. In December following the incorporation the platted part of the village contained 19 persons, men, women and children, and its present population is 12, five adults and seven children. It never contained more than eight buildings, only five of which now remain, one thereof being the village jail. The population of the whole territory never exceeded 52 persons, though at the date of the incorporation many laborers were employed at lumber camps within the district, but their presence was temporary, during the logging season, and they had no actual residence therein. Immediately following the incorporation and election of officers several saloon licenses were issued, and the roadhouses thus established, perhaps more properly termed industries, were continued from year to year, and the license fees therefrom supplied the only revenue with which to defray the village expenses; no village taxes were ever levied, assessed or collected. Of the saloon license fees paid into the village treasury, $90 were paid to the state as and for the two per cent inebriate asylum or liquor license tax statute.

The contention of the attorney general was that the incorporation of the village was fraudulently obtained, that it never contained the necessary population and for that reason should be dissolved. The trial court sustained this contention.

It is contended by appellants in this court that the laborers in the lumber camps were properly included in determining the "resident population," and that by including them therein the territory incorporated contained the necessary population of 140. Appellants' contention should not be sustained. The purpose of the statutes providing for the incorporation of small villages is to further the interests, and for the better protection, of those actually residing and having a fixed abode within the territory incorporated, and not for the benefit of those who may be temporarily sojourning therein. In this particular case there were in fact only 52 actual residents within the territory. The laborers at the lumber camps were there temporarily, during the logging season, and cannot be included to make up the necessary population, for they cannot be considered or treated as residing in the territory within the meaning of the statute. These facts do not appear to have been called to the attention of the board of county commissioners, at the time the petition for incorporation was presented, and the act of incorporation without the necessary population was unauthorized and illegal.

Appellants also contend that since the village paid the inebriate asylum tax the state is estopped to question the legality of the incorporation. The contention is not sound. The case of State v. Village of Harris, 102 Minn. 340, 113 N. W. 887, 13 L.R.A.(N.S.) 533, 12 Ann. Cas. 260, is not in point. The license tax was paid to the state auditor, and he was wholly without authority to refuse it, nor could he determine the legality of the organization proceedings had the facts been presented to him. No recognition of the village has been made by legislation, or by taxation by the state authorities, and no evidence was presented showing that with knowledge of the facts either executive or legislative department of the state has dealt with the village as such. No other facts are shown to justify an application of the rule applied in the Harris case.

Judgment affirmed.